TEXAS & PAC. RY. CO. v. KEY. (No. 1442.)

(Court of Civil Appeals of Texas. Texarkana. April 6, 1915. Rehearing Denied April 15, 1915.)

1. RAILROADS ⚷⟳400 — INJURIES ABOUT TRACK—QUESTION FOR JURY.

In an action for personal injury to a boy of nine, who, while on a pathway crossing defendant's track, was struck and injured by a shunted car, *held*, on the evidence, that whether the pathway was one commonly used by the public was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. ⚷⟳400.]

2. RAILROADS ⚷⟳356—ACCIDENT ON TRACK—LIABILITY.

Where a pathway crossing a railroad track had been generally used by the public, the road's implied permission to so use the pathway might be inferred, and it was bound to use such vigilance and caution as a person of ordinary prudence would use under like circumstances.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1228–1234; Dec. Dig. ⚷⟳356.]

3. TRIAL ⚷⟳260—REQUESTED INSTRUCTIONS—GIVEN INSTRUCTIONS.

Where the charge given sufficiently submitted the question, the refusal of a requested charge thereon was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ⚷⟳260.]

4. RAILROADS ⚷⟳381—ACCIDENT ON TRACK—CONTRIBUTORY NEGLIGENCE.

It was the duty of one walking upon or crossing a railroad track to use ordinary care to protect himself from the danger from moving cars; and if he failed to exercise such degree of care, or if the place was not commonly and habitually used for public travel with the knowledge and acquiescence of the road, or if he was sitting under or near a standing car when it was moved by a kicked car, he could not recover.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1285–1293; Dec. Dig. ⚷⟳381.]

---

**5. APPEAL AND ERROR ☞1062 — HARMLESS ERROR — SUBMISSION OF QUESTIONS — CONTRIBUTORY NEGLIGENCE OF INFANT.**

In an action for injury to a boy of nine, struck by a moving car while on or crossing defendant's track, where the father testified that he was intelligent, and knew enough to get out of the way of the danger of the track, the submission to the jury of the question whether he was of sufficient age to know the danger from the cars was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ☞1062.]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by Dreeben Key, by his next friend, against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Dreeben Key, a boy nine years old, sues, through his father as next friend, the appellant for damages for personal injuries. The boy was struck and knocked down by a moving car, and the flange of one wheel ran over his foot, grievously injuring him, while he was walking across the extreme north track, where a pathway crosses it at the west end, in the yard of appellant at Marshall. The injury occurred at about 9:30 o'clock in the forenoon. The negligence alleged is (1) in bumping loose and uncoupled cars over and across a pathway which crosses the track, frequently and commonly used by people with the knowledge and acquiescence of the railway company; and (2) in failing to give signal or warning, or to keep a lookout, while operating cars, for persons using the crossing in traveling the pathway. The appellant entered a general denial, and pleaded as a defense that Dreeben Key at the time of the injury was a trespasser in the private yards of the railway company, and that none of the employés on the cars knew or had reason to suppose that he was in a place of danger, or was in a position that he would be injured by the cars bumping against cars placed on the track. The jury decided the issues of fact in favor of appellee.

The railroad yards at Marshall are about 700 yards long east and west, and about 300 or 400 yards wide north and south, embracing about 60 acres of land. The yards are situated between the streets of the business section of Marshall on the south, and the residence section, known as North Marshall, on the north. In the northwestern portion of the yards is a large brick building, about 300 feet wide and 500 feet long, called the "New Shops." The railway yard has some 12 or 14 tracks, running east and west. Several of the tracks run into the New Shops, but the extreme north track, on which the injury occurred, runs to the north of it. On the morning of the injury a string of some 20 or 25 cars was standing on this north track, with the end of the rear car resting near and east of a pathway that crosses the track there. Previous to the injury the switch engine went in on the track from the east to get several of the cars out and to put another string of 5 or 6 cars in their place back on this track. In order to put this string of cars back westward on the track, the engine gave them a kick. When the cars that were kicked back reached the string of cars already on the track, they bumped against them with force sufficient to move them 6 or 8 feet further west. A brakeman rode the kicked cars to apply the brakes. The men operating the engine were some 600 or 700 feet east of where the injury occurred, and did not know, they testified, that the boy was there. Before having the cars kicked, the foreman did not send any person back to see if there was any one in the way, or to the rear of the standing cars, or on or near the track. According to the evidence of appellee, he was walking from the shops in a northeasterly direction along a pathway that crosses near the west end of this north track; and while momentarily on the track, in the act of crossing it, and not knowing or seeing there was to be a movement of cars, was struck and injured by the sudden moving of the string of cars that were bumped against. In respect to the pathway in issue there is a conflict of evidence. According to the testimony in behalf of appellee, at the time of injury, and long before, there was a pathway, which was habitually and commonly used by the public in walking, that turned from the concrete walk east of the New Shops at a point opposite the north opening in the shops, and leading by the wheel tracks, and across the extreme north track, and beyond it in a northerly direction, then turning east across the yard, and leaving the yard at an opening in the north fence. Charles Key testified:

"That pathway crossing the track at the point where he was injured had been there for about six years."

According to the testimony in behalf of appellant, the public enter the shop grounds at a gate in the north fence around the shops, and pass along a publicly used path just east of the shop building on south to the town, and return the same way. It was further shown by appellant that east of this pathway, and north of the north track, is a piece of level ground, and to this piece of ground trash is hauled in trucks from inside the shops and burned; and when laborers would come out of the shops at the east end thereof with trash, they would frequently go from the door of the shops to the northeast and cross the north track about where the boy was injured, and in traveling that way had formed a beaten path. A steel apron, or piece of iron, one-half inch thick and about 4 feet wide and 4 feet long, was placed there, so that trucks of rubbish would mount the rail easily. It was further shown by appellant that people not in the employ of the railway company would often cross to where the rubbish was burned, either for curiosity

or to get bolts, pieces of plank, or other rubbish. It was the contention of appellant that the boy was not injured on any crossing habitually used by the public, but near a path made by employés, and 70 or 80 feet from the public pathway.

The jury, in their province, determined the question in favor of appellee. After the boy was injured, he was carried into the office of the foreman of the shops, and several witnesses testified that the boy then stated he was sitting by the track, under the shade of the car, when he got hurt. The boy denied having said he was under the car, and there is some evidence corroborating him. The boy's father testified, on examination by appellant, that the boy was a boy of intelligence, and in his opinion knew of the danger of moving cars in the yard, and knew that they would hurt him, and had sufficient intelligence to get out of the way of the danger of the track. The verdict of the jury comprehended the finding that appellant was guilty of negligence as pleaded proximately causing the injury, and that the boy was not guilty of contributory negligence. As there is evidence to support the verdict, we make the finding of fact involved in this verdict.

F. H. Prendergast, of Marshall, for appellant. Beard & Davidson, of Marshall, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] Error is predicated upon the refusal of the court to grant a new trial upon the ground that the verdict is contrary to the evidence, in that there was no such crossing used by the public at the place appellee was hurt as would make it the duty of the employés operating the cars to keep a watch for his presence there. As to whether there was a footpath commonly used by the public, leading across the railway track at the place of injury to the opening in the north fence, was a matter about which there is conflicting evidence. Taking the evidence offered by appellee, the jury could say that such footpath existed, and that for some time it had been commonly and extensively used by the public. In this state of the evidence, it is thought, the question was one entirely for the determination of the jury. And finding, as the jury were authorized to find from some of the evidence of appellee, that there had been for several years an extensive use of the footway by the public, an implied permission on the part of the appellant, such as is claimed by appellee, to use the yard and track as a footway, could be inferred. In such circumstances, the duty devolved upon the appellant, within the terms of the law, to use such amount of vigilance and caution as a person of ordinary prudence would use under like circumstances. Railway Co. v. Crosnoe, 72 Tex. 79, 10 S. W. 342; Railway Co. v. Smith, 87 Tex. 357, 28 S. W. 520.

[3] Therefore the first, second, and fourth assignments of error, it is concluded, should be overruled. And as the evidence raised an issue as to the extent and publicity of the use of the place by the public as a footway, the sixth assignment is overruled. And because the court's charge sufficiently submitted the question to the jury, the refusal to give the special charge complained of in the seventh assignment does not constitute ground for reversible error.

In view of the evidence, it is not thought that it could be held, as a matter of law, that the boy was guilty of contributory negligence, and therefore the third and fifth assignments of error are overruled.

[4] In the thirteenth paragraph of his charge the court instructed the jury as follows:

"It was the duty of Dreeben Key to use ordinary care to protect himself against the dangers arising from the movement of the cars through the yards, and if he failed to exercise this degree of care in walking upon or crossing the track of the defendant, if he did so, you will find for the defendant; or if you find that the said Dreeben Key was injured at a place not commonly and habitually used for travel by the public with the knowledge and acquiescence of the defendant, you will find for the defendant; or if you shall find that Dreeben Key was sitting on the ground under or near the car at the time he was injured, if he was injured, you will find for the defendant."

This charge sufficiently covered the question of contributory negligence, and assignment No. 10 is overruled.

[5] The court in the twelfth paragraph of his charge instructed the jury as follows:

"If you find from the evidence that Dreeben Key was guilty of contributory negligence, as this term has been defined to you, which caused or contributed to cause his injury, he cannot recover, even though you find that the defendant was guilty of negligence in causing him injury, if any. And in this connection you are instructed that the conduct of a person of tender years is not to be judged by the same rule which governs adults, for the law does not require that a person of tender years shall exercise the same degree of care and caution as a person of mature years, but only that degree of care and caution that a person of the same age, intelligence, and experience would reasonably be expected to use under the same or similar circumstances. Bearing in mind this instruction, if you find that he contributed to his injury by his failure to exercise ordinary care, you will find for the defendant."

The objection to this charge made in the trial court was:

"Because the facts show that Dreeben Key was of sufficient age to know the dangers from the cars."

The proposition is:

"Where a boy nine years old is injured in the railroad yard, and the evidence shows he knew the danger, and no evidence that he did not know the danger from the cars, then that matter should not be submitted to the jury."

The following evidence given by the father of the boy is all the evidence in the record pertaining to the question:

"Q. Was your boy of any intelligence? A. I suppose so. Q. Did you think he knew of the danger of the cars moving on towards the yard? A. I think he knew they would hurt

him.   Q. Did you think he had intelligence enough to get out of the way of the danger of the track?   A. Sure I did."

Clearly the father's evidence as to the boy's appreciation of the danger of passing near the cars was opinionative in its nature, and not conclusive. The boy testified in the case, and his appearances were before the court and jury for observation and estimation of capacity to take care of himself and appreciate danger. He was of the age of nine years, according to the proof. In Railway Co. v. Voss, 159 S. W. 64, a charge like this was held harmless in the facts. And in view of the facts, and ruling only upon the precise objection made, it is concluded that reversible error was not committed.

The remaining assignments have been considered, and are overruled.

Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

