Missouri, Kansas & Texas Railway Company of Texas et al. v. J. C. Butts.

Decided November 2, 1910.

**1.—Death—Damages—Adult Son.**

Evidence considered in case of action of a son of 35 for death of his mother, 65 years of age, assisting in housekeeping for him and for his wife, and held to show such financial interest of plaintiff in the life of deceased as to support a recovery of damages.

**2.—Negligence—Contributory—Crossing**

Evidence considered in case of a woman run down by an engine in crossing railway tracks, showing failure of deceased to stop or look before stepping on track, but not necessarily failure to listen, held not so conclusive as to the contributory negligence of deceased as to establish same as matter of law, the question being for the jury. International & G. N. R. Co. v. Edwards, 100 Texas, 22, distinguished.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Coke, Miller & Coke* and *Clark, Yantis & Clark,* for appellants.—Before a recovery can be had for the death of a parent it must appear that the party to be benefited by the recovery has suffered a pecuniary loss, dependent upon such relationship. Railway Co. v. Johnston, 78 Texas, 536; Texas Portland Cement & Lime Co. v. Lee, 36 Texas Civ. App., 482; Standard Light & Power Co. v. Muncey, 33 Texas Civ. App., 416; Railway Co. v. Cowser, 57 Texas, 293; Railway Co. v. Malone, 63 Md., 135; Potter v. Railway Co., 121 Wis., 377.

Where a person enters upon a railway track at a public crossing without the exercise of ordinary care and prudence, there being nothing to prevent such person in the exercise of said care from seeing an approaching train, no cause of action will arise from the injuries sustained by reason of collision. Railway Co. v. Dean, 76 Texas, 73; Smith v. Railway Co., 128 S. W., 1178; Railway Co. v. McDonald, 99 Texas, 207;

Railway Co. v. Edwards, 100 Texas, 22; Bennett v. Railway Co., 36 Texas Civ. App., 459; Railway Co. v. Kaufman, 46 Texas Civ. App., 72.

*Allen D. Sanford* and *Geo. N. Denton,* for appellee.—Pecuniary loss by plaintiff was shown. Railway Co. v. Long, 26 S. W., 116; Railway Co. v. Henry, 75 Texas, 221; March v. Walker, 48 Texas, 375; Railway Co. v. Cowser, 57 Texas, 303; Railway Co. v. Lester, 75 Texas, 61.

As to whether a person is guilty of contributory negligence is a question, under proper instruction, for the jury. I. & G. N. Ry. v. Tinon, 117 S. W., 936; Railway Co. v. Ives, 144 U. S., 417; Railway Co. v. Wagley, 15 Texas Civ. App., 308; Frugia v. Railway Co., 82 S. W., 915; Railway Co. v. Willard, 98 S. W., 220; Railway Co. v. Balliett, 107 S. W., 908; Railway Co. v. Cardena, 22 Texas Civ. App., 300.

RICE, ASSOCIATE JUSTICE.—On the 12th of June, 1907, Mrs. Susan E. Butts, while crossing Oak Street, in the town of West, was run over and killed by an engine drawing a local freight train on appellant's line of railway, which ran north and south through said town; and this action was brought against it by her son, J. C. Butts, to recover damages therefor, in which suit Mrs. Ophelia Lynn and husband, J. T. Lynn, as well as the minors, True Gray, Bernice Gray and Annie Gray, were made parties defendant, the former being the sister and the last three the children of a deceased sister of Mrs. Susan Butts, it being alleged that they were not entitled to recover, because they had no pecuniary interest in the life of the said Mrs. Butts.

The negligence alleged consisted in the failure of appellant's operatives to ring the bell or blow the whistle of the engine before reaching said street crossing, as they were required to do under the law, and in failing to keep a lookout for persons crossing said street, and running at a greater rate of speed than six miles an hour, which was prohibited by the ordinances of said town; all of which were alleged to be the proximate cause of her death.

The defendant answered by general and special exceptions, general denial and by plea of contributory negligence on the part of said Mrs. Butts.

A jury trial resulted in a verdict and judgment in favor of plaintiff in the sum of $1200 against the Railway Company, and in favor of the Company against Mrs. Ophelia Lynn and husband, plaintiff having dismissed as against said minor defendants; from which judgment this appeal is prosecuted.

The first and second assignments present the same question in this: By the first it is asserted that the court erred in overruling defendant's motion for a new trial, because the verdict and judgment rendered were contrary to the law and evidence, in that the evidence did not show that plaintiff suffered loss by reason of the death of his mother sufficient to entitle him to recover; and by the second it was urged that the court erred in failing to peremptorily instruct a verdict in behalf of the de-

fendant, for the reason that it appeared from the undisputed evidence that plaintiff did not sustain any damage for which he would be entitled in law to recover.

By its proposition under the first assignment appellant insists that before a recovery can be had for the death of a parent, it must appear that the party to be benefited by the recovery has suffered a pecuniary loss dependent upon such relationship. This is conceded to be the law, but appellee contends that this requirement was met by the proof. It appears from the evidence that he had lived with his mother up to the time of his majority and from that time until his marriage; that subsequent to his marriage, which occurred in 1898, his mother had made her home with him, and that since said time she had continually performed all the household duties, with the exception of caring for the room of his wife, Mrs. Kate Butts, which was looked after by the latter. Plaintiff was thirty-three years of age and was the editor of the "West Times," a paper published in the town, while his wife conducted a millinery business, giving her entire attention thereto. The deceased was shown to be about 65 years of age at the time of her death, but was exceptionally strong and stout, rarely ever sick, and able and willing to perform the duties of housekeeper; and for which the testimony showed plaintiff would have had to pay some $15 or $20 per month, if she had not performed same. Besides the household work, she had a class in embroidery and frequently did fancy work, from which she derived a revenue and paid for most of her wearing apparel and other personal expenses. The plaintiff, however, paid the house rent and paid for all living expenses, occasionally giving his mother from time to time, articles of clothing. He testified that if he needed any money and she had it, that she gave it to him. He further testified that his mother's services, by reason of her great economy and the personal interest that she took in his affairs, were worth to him the sum of $25 per month; and that she would have been likely, by reason of her health, to have continued for a period of many years to perform these services. There was no evidence controverting this, but, on the contrary, it was confirmed by other witnesses. This being true, it would appear that plaintiff had a pecuniary interest in the life of his mother, such as seems to be recognized by the authorities in this State as a basis for recovery. See San Antonio & A. P. Ry. Co. v. Long, 26 S. W., 116; Missouri Pac. Ry. Co. v. Henry, 75 Texas, 221, 12 S. W., 828; March v. Walker, 48 Texas, 375; Houston & T. C. Ry. Co. v. Cowser, 57 Texas, 303; Missouri Pac. Ry. Co. v. Lehmberg, 75 Texas, 61. We also desire to cite in this connection the following cases from other jurisdictions, in which the exact question here presented, after full consideration, has been determined in favor of appellee's contention: Baltimore & Ohio R. R. Co. v. State for the use of Martha E. Mahone et al., 63 Md., 135; Phalen v. Rochester Ry. Co., 31 App. Div., 448, 52 N. Y. Supp., 836; Lazelle v. Newfane, 70 Vt., 440, 41 Atl., 511; Omaha Water Co. v. Schamel, 78 C. C. A., 68, 147 Fed., 502; Countryman v. Fonda J. & G. R. Co., 166 N. Y., 201, 59

N. E., 822. See also note to Carter, Admr. v. West Jersey & Sea Shore R. R. Co., 19 L. R. A. (N. S.), 128. In the two first cases last above cited, adult children brought the suits for the recovery of damages sustained by them on account of the death of their mother, and in each of which it was directly held that they were entitled to recover on the ground that they sustained pecuniary damage by reason of her death; it being shown on the trial that the mother had aided by her labor in the support and maintenance of the family of her said children; which services, it was fair to presume, she would likely have continued to render during her lifetime, and upon which ground alone, it seems, the court based its decision.

In the case of Railway Co. v. Long, supra, it was held in an action by adult children against a railway for damages for the death of their mother caused by its negligence, that allegations that the deceased aided in support of plaintiffs, and cared for them in their sickness, and that they expected the continuance of these benefits, was sufficient to show damage, and that plaintiffs, under such circumstances, might recover if actually damaged, in case the deceased could have recovered for personal injuries. For which reasons we are compelled to hold that the court did not err as pointed out in these assignments.

The third and fourth assignments complain of the judgment of the court for failing to grant a new trial on the ground that the evidence showed that plaintiff's mother was guilty of contributory negligence at the time she was killed in entering upon the tracks of defendant; and that the court erred in refusing, for this reason, to peremptorily direct a verdict in its favor. It is shown that the railway ran north and south through the town of West; that the principal business portion of the town was on the east side of the railway, and that plaintiff and his mother lived on the west side of the track. Oak and Cedar streets ran east and west through the town, crossing the railway track, the former being south of the latter. The deceased was struck while traveling west on Oak street at the point where the railway crossed it. On the morning in question the local freight train running from Hillsboro to Temple was in town discharging freight, and a short time before the accident, it seems, had switched and left a string of box cars on a sidetrack east of and parallel with the main track, and had then proceeded with the engine and two cars to the oil mill, which was several blocks north of Oak and Cedar streets. The deceased, between 10 and 11 o'clock on said morning, left the stores on the east side, and walked west on Cedar street in the direction of her home, at which time a strong wind was blowing from the south. She was wearing a sunbonnet, and from the testimony it appears that her attention was first directed to the string of cars on the sidetrack. Walking rather fast she passed these, slowing up just before she reached the main track. She was still looking in a southerly direction as she stepped upon the track and was struck and killed by the engine, which was coming south from the direction of the oil mill. There is testimony to the effect that neither the whistle was

blown nor the bell rung before reaching this crossing; and it was also shown by parties who observed the position of the engineer and fireman, that the former was not sitting at his seat in the cab at the time of and just prior to the accident, and that the fireman was not looking in the direction they were going, but was either looking down at the ground or across at the business houses on the east side of the track. It was further shown that the train was running at the rate at least of from 10 to 15 miles per hour at the time deceased was struck. It is true that both the engineer and fireman testified that they were not running beyond four or five miles an hour, and that they both testified that the bell was ringing all the while, but they admit that the whistle was not blown for this crossing, claiming, however, that the same was sounded above Cedar street crossing. The engineer admits that he did not see the deceased until about the time she was struck, but accounts for this by saying that he was on the right hand or west side of the engine, and that she was approaching from the east side, and that the end of the boiler obstructed his view, and that he put on the emergency brake as soon as the danger signal was given by his fireman. The fireman, although claiming to have been looking ahead all the time, said that he did not see the deceased until she was within forty or fifty feet of the track, approaching from the east side but did not give the signal of danger until later, when she was much nearer the track. It was shown that the main track is on a slight elevation, and that the deceased, if she had been looking in that direction, could have seen the train for one-fourth of a mile, or such matter, approaching from the north; and that the operatives could also have seen her that distance. It did not appear that this freight train had any schedule, nor that it arrived and departed at any particular time from West. Nor does it appear from the evidence that the deceased knew that the train had arrived and was doing switching at the time she undertook to cross the street.

The case on its facts, is very similar to that of the International & G. N. R. Co. v. Tinnon, 117 S. W., 936, in which it was contended by the appellant that the deceased was guilty of contributory negligence, as a matter of law. It was held in that case that the failure of a person approaching a railway crossing to stop, look and listen is not negligence, as matter of law, but that the question of negligence *vel non,* under the facts of that case, was for the jury. In the case at bar, while the evidence shows that the deceased did not stop before going upon the track, and that she was not looking in the direction from which the train was coming when she undertook to cross, still, there is nothing to show that she did not listen for the approaching train before entering upon the track. The evidence of the engineer shows that the train was making but little noise, and that it could easily, under the circumstances, to use his expression, have "slipped up" on anyone, because he states that he had cut off the steam, and it was running by its own momentum. So that, even had she been listening she would not likely have heard it,

especially since the wind was blowing strongly from the south, and the train was coming from the opposite direction.

We are aware that our Supreme Court has held in the case of International & G. N. R. Co. v. Edwards, 100 Texas, 22, 93 S. W., 106, that a plaintiff is not entitled to recover where he admits that he walked upon the track at a crossing without looking or listening for the approaching train, relying upon the performance of the duty on the part of the company to ring the bell or blow the whistle. But we think this case is distinguishable from the doctrine there announced, for the reason that in that case the appellee admitted that he not only failed to look, but likewise failed to listen; and, in the night time, walked upon the track in front of an approaching train with an electric headlight, although he was familiar with the crossing and knew of the frequent passing of trains, and that he could have seen and heard it if he had looked and listened. Mr. Elliott, after discussing the doctrine that a person is guilty of contributory negligence who goes upon a railway track without first stopping, looking and listening for an approaching train, concludes with this statement: "In the majority of cases, however, the question is one of fact, or a mixed question of law and fact, rather than a pure question of law." (Elliott on Railroads, vol. 3, concluding clause of sec. 1167, p. 360.) The rule seems to be that if reasonable men might fairly differ as to whether, under the existing conditions, the deceased acted as an ordinarily prudent person would have acted, she could not be held negligent as a matter of law, but that the issue so raised is for the jury.

We do not believe, in the present case, after a full consideration of all the facts in evidence, that this is a case in which we should declare, as matter of law, that the deceased was guilty of contributory negligence in going upon the track; but are inclined to believe that, under all the evidence, the question of whether she was guilty of contributory negligence was a matter of fact to be submitted for the consideration of the jury; and, so believing, we overrule the assignments raising this question.

We have carefully considered the remaining assignments; and, believing that they present no reversible error, the same are in all things overruled.

Finding no error in the proceedings of the trial court, its judgment is affirmed.

*Affirmed.*

Writ of error refused.