SMITH v. GALVESTON–HOUSTON ELECTRIC RY. CO. (No. 550—4289.)*

(Commission of Appeals of Texas, Section B. Nov. 18, 1925.)

1. **Railroads ⬅350(11)—Whether speed of interurban car was excessive held for jury.**

In action by truck driver against interurban railroad for injuries received at crossing, which was much traveled, and at which there was one obstruction to the view, whether railroad was guilty of running its car at excessive rate of speed *held* for jury.

2. **Trial ⬅351(6)—Failure to submit issue of defendant's negligence because issue of discovered peril was submitted held error.**

In railroad crossing collision case, court was not relieved of duty to submit the issue, raised by the evidence, of defendant railroad's negligence in operating its car at excessive speed by a finding favorable to defendant on submitted issue of discovered peril; the theory that, when the issue of discovered peril arises, all other issues of preceding negligence are eliminated, being untenable.

3. **Railroads ⬅350(13)—Contributory negligence of truck driver held for jury.**

In action by truck driver against interurban railroad for injuries at crossing, question of plaintiff's contributory negligence *held* for jury.

4. **Railroads ⬅93—Statute held not to require consent of county authorities before placing interurban tracks across public road.**

Vernon's Sayles' Civ. St. 1914, art. 6735, does not require interurban railroad companies to obtain consent of county authorities before placing tracks across public road.

Error to Court of Civil Appeals of First Supreme Judicial District.,

Action by Lawrence L. Smith against the Galveston-Houston Electric Railway Company. Judgment for defendant was affirmed by the Court of Civil Appeals (265 S. W. 267), and plaintiff brings error. Reversed and remanded.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied January 27, 1926.

Albert De Lange, of Houston, and Stewarts and Brantly Harris, both of Galveston, for plaintiff in error.

G. B. Ross and Terry, Cavin & Mills, all of Galveston, for defendant in error.

POWELL, P. J. This case is fully stated in the majority opinion of the Court of Civil Appeals. This opinion, as well as the dissent by Justice Graves, is reported in 265 S. W. 267. We shall not restate the case here except to say that the trial court declined to submit any issue to the jury other than discovered peril. Smith, driving his truck, was injured on a public highway crossing over which the interurban operated. The truck and interurban were both going in the same direction until the truck turned across the interurban track. The highway and track came together at an angle of about 41 degrees. The accident occurred on the Galveston-Houston public highway about 3 miles beyond the causeway, and on the way to Houston. Upon the one issue of discovered peril, the jury answered in favor of the company. Upon that answer, judgment was rendered that Smith take nothing by his suit.

Upon appeal, the Court of Civil Appeals, by a divided court, as already indicated, affirmed the judgment of the district court.

The first assignment of error in the application reads as follows:

"The Court of Civil Appeals erred in overruling assignment of error No. 3, as numbered in brief of plaintiff in error, reading as follows: 'The court erred in refusing special instruction No. 10 requested by plaintiff, reading as follows: "Issue No. 2: Was the defendant, the Galveston-Houston Electric Railway Company and its servants negligent in operating its car under the circumstances at the rate of speed it was operating same at the time it neared the crossing at which the collision with the truck driven by plaintiff occurred? You will answer 'Yes' or 'No' according as you may find the facts to be." ' "

It was upon the correctness of the refusal of the trial court to submit this issue that the Court of Civil Appeals divided. Upon all other issues raised, Justice Graves agreed with the other members of his court. He did criticise the definition of discovered peril as submitted to the jury, but admitted he did so in the absence of any objection thereto. In what we shall hereafter say, we have no reference to this discussion relative to the correctness of the discovered peril charge given to the jury. The correctness of that charge is not before our court, and we express no opinion thereon. But, in so far as Justice Graves discusses the charge which is the basis of the assignment we have quoted, we approve his views. We have read the record, and there is evidence justifying his statements. As might be expected, the evidence in the record is conflicting. But there was evidence, as Justice Graves points out, raising the issue involving

the speed at which this interurban car was being operated at the time of the accident. We doubt if we can add anything to what Judge Graves says.

Where two railroads cross at grade, you have an essentially dangerous situation. The same thing is true where a public road crosses a railroad track. It is likewise true where two public highways or city streets cross each other. There have been many attempts by state law, city ordinances, and otherwise to minimize what we all realize is a very dangerous situation at best. But in spite of the regulations made in an attempt to lessen this danger, accidents continue to occur. Consequently, we have reached the point where grade crossings of every kind are being avoided wherever possible. In many instances, the federal government will build a new public road by changing its route entirely rather than improve one which crosses and recrosses a railroad track. In other cases, overhead crossings are constructed. In still other instances, interlocking devices are provided. There is sufficient danger in all crossings at grade of a highway and railway to require the exercise of ordinary care by each of the parties using such crossing. This has always been the law in this state; and, unless all reasonable minds can reach but one conclusion upon a given state of facts, it is held that the question as to whether or not there has been a failure to exercise ordinary care is one for the jury.

[1] Under this test, we are clearly of the view that it was for the jury to determine whether or not, under all the circumstances surrounding the accident in the instant case, the company was guilty of negligence in running its car at the rate of speed alleged in the petition. The speed is variously estimated at from 30 to 45 miles per hour. Under the most favorable testimony for the company, the interurban car could not have been stopped in less than 300 feet if the speed was only 30 miles an hour. If the speed exceeded that limit, it would have required a greater distance in which to stop the car. There is evidence that it would have required 500 feet to make a stop at the time of the accident. Is it careless for a train to operate at this speed? That depends upon circumstances. In this connection, we quote as follows from an opinion of the Court of Civil Appeals at Fort Worth, speaking through Justice Speer, in the case of Railway Co. v. Tucker, 48 Tex. Civ. App. 115, 106 S. W. 764:

"Neither was there error in authorizing a finding for appellee if the train approached the crossing at a negligent rate of speed. While ordinarily the operatives of a railway train are not required to slacken the speed in approaching public crossings, yet the circumstances may be such as that they ought to do so. In the present case, considering the allegations and proof tending to support them—that no bell was being rung, no signboard was erected, and the engine equipped with an insufficient headlight—

the jury might properly have concluded that the train was being operated at a dangerous and negligent rate of speed. We find as a fact that the evidence authorized all the charges given, that the defense of contributory negligence was properly submitted, and that the verdict finds support in the testimony."

In the Tucker Case, writ of error was denied by our Supreme Court. In that case, the court had certain circumstances before it. Here we have, in a measure, a different set of circumstances, but none the less material. We have a muchly traveled highway in the summer time between two great cities, one of which is a summer resort. It is a paved road. It is almost constantly used. It is for the jury to say whether or not it is negligence to run an interurban across the highway at say 40 miles an hour, when it has no gates nor signals of the kind pleaded at the crossing to warn of the approach of the train. We do not say the situation here required the company to keep a flagman there. Its duty depends upon all the circumstances. If the company desires to run at great rates of speed over such a crossing, then the jury might well say that it should have a ringing danger signal to warn those in trucks who are about to use the crossing. These ringing signals are frequently used, and do warn automobile drivers of the approach of the train. Or a jury might say that greater speed would be allowed where the crossing is at right angles instead of at 41 degrees. Or a greater rate of speed might be permitted by a jury where there were absolutely no obstructions near the crossing. In the case at bar, there was one obstruction. The refused issue merely asked the jury to determine whether or not, under all the circumstances present at the time, the speed of the interurban was excessive. The jury might well have found that, at a crossing situated as this one was, a car should not make such speed as to require from 300 to 500 feet to stop and avoid an accident to one who might not discover the approach of the train. This is a fact question for the jury. We do not intimate how we would answer the issue if we were on the jury. We do say the jurors had a right to pass upon that issue.

[2] We quote from the majority opinion of the Court of Civil Appeals as follows:

"The undisputed evidence shows that the motorman saw plaintiff as he approached the crossing, and long before he reached a position of danger. The jury found that when the motorman realized plaintiff's danger he used proper care to prevent the collision. The finding that plaintiff was not in peril up to the time that the motorman applied his brakes necessarily involves the finding that the car was not being run at a rate of speed which would render the crossing dangerous to persons approaching it. The entire question of negligent operation of the car, so far as plaintiff was concerned, was submitted to and passed upon by the jury in answering the issue of discovered peril. No com-plaint of the manner in which this issue was submitted, nor of the verdict of the jury thereon, is made by plaintiff."

As Judge Graves says, this conclusion is erroneous. It proceeds upon a theory which has never been approved by the Supreme Court or Commission of Appeals. That theory is that, when the issue of discovered peril arises, all other issues of preceding negligence, on the part of either the plaintiff or defendant, are eliminated. It is readily seen how, under certain findings, the issue of discovered peril and the finding of the jury thereon would render other issues immaterial; or the convicting of a plaintiff of contributory negligence might render other issues immaterial. But we are unable to find any reason to support the correctness of a proposition to the effect that, in the absence of contributory negligence, an adverse finding on discovered peril would deprive a plaintiff of his right to recover for primary negligence of the defendant. For instance, this very jury might well have found, as they did, that, after the motorman actually knew (words used in discovered peril charge) of Smith's peril, he did all he could to avoid the collision. But that same jury might have thought, and they made no contrary finding, that Smith was in peril before the motorman discovered it, and that this prior peril was due to the reckless rate of speed at which the electric car was being driven, if being so driven. This very question was decided by this section of the Commission of Appeals in the case of Hines v. Foreman, 243 S. W. 479. Presiding Judge McClendon discusses this very contention, beginning with the last paragraph on page 484 of 243 S. W. The case was reversed and remanded, and the holding of the Commission approved by the Supreme Court. This latter court itself has recently held that discovered peril and other elements of negligence are ordinarily separate and independent issues.

The first assignment in the application must be sustained, and the case reversed for another trial. We think the issue outlined in this assignment amply covers the entire theory of primary negligence alleged against the company.

[3] Under the facts in this record, Smith was not guilty of contributory negligence as a matter of law. There is positive testimony that he exercised the precaution to look for this interurban before he went upon the crossing. Under the circumstances here present, we do not think all reasonable minds would convict him of falsifying in this testimony. There is testimony in the record which negatives any theory upon which Smith might be convicted of contributory negligence as a matter of law.

[4] We think what we have said disposes of all the assignments in the application except one other. That contention is answered by the Court of Civil Appeals as follows:

"We do not think article 6735 of Vernon's Sayles' Civil Statutes can be construed as requiring interurban railway companies to obtain the consent of county authorities before placing their tracks across a public road; such consent is only required when the railway track is constructed 'along and upon' a public road. If, however, the construction of the track across the road could be held unlawful, such trespass upon the highway could not be regarded as the proximate cause of plaintiff's injury, but at most would constitute a nuisance of which only the public could complain."

Upon this point, Justice Graves does not dissent. We do not think the presence of the interurban track across the highway could be the proximate cause of this accident. To be sure, if the track had not been there, the electric car would not have been there, and the collision would not have occurred. But this is too far-fetched to be the proximate cause of the accident. See Railway Co. v. Price (Tex. Civ. App.) 244 S. W. 642; same case (Tex. Com. App.) 269 S. W. 422.

For the error indicated, we recommend that the judgments of the distrit court and Court of Civil Appeals be reversed and the cause remanded to the former for a new trial not inconsistent herewith.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission of Appeals on the questions discussed in its opinion.